UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIE FOXWORTH,

Plaintiff,

vs.

BROOKLYN KARMA, CORP.,

Defendant.

**COMPLAINT**

Plaintiff, STEPHANIE FOXWORTH (hereinafter, "Plaintiff"), by and through undersigned counsel, brings this action against Defendant, BROOKLYN KARMA, CORP. (hereinafter, "Defendant"), for violations of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., (hereinafter, the "ADA") arising from Defendant's failure to ensure that its e-commerce Website, www.lilybrooklyn.com ("Website"), is accessible to blind and visually impaired individuals.

**INTRODUCTION**

1. Plaintiff STEPHANIE FOXWORTH is a legally blind resident of New York County, New York. Plaintiff suffers from a visual impairment that substantially limits the major life activity of sight.

2. Because of her permanent and irreversible vision loss, Plaintiff relies exclusively on screen-reader software, including VoiceOver, to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, screen-reader software can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, screen-reader software

cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant, BROOKLYN KARMA, CORP., on information and belief, owns, operates, and/or controls the commercial retail website www.lilybrooklyn.com ("Website"), which markets and sells goods and/or services to consumers nationwide, including New York. The Website functions as an online retail store and a digital gateway to Defendant's goods and services. Defendant is responsible for ensuring that the Website complies with federal, state, and local accessibility laws.

4. Defendant's Website is not a standalone digital platform; rather, it is heavily integrated with, and operates as a service of, Defendant's physical retail location located at 209 Court Street, Brooklyn, NY 11201 (the "Subject Premises"). The Website functions as a critical gateway through which customers access the goods and services offered at the Subject Premises, including browsing merchandise, obtaining information regarding products offered for sale, locating physical store locations, and making purchases from Defendant's integrated retail operation. The goods, services, privileges, advantages, and accommodations offered through the Website are closely connected to, and facilitate access to, the goods and services offered at the Subject Premises.

5. Defendant's Website is designed to promote and support Defendant's physical retail location by providing customers with information regarding Defendant's merchandise, retail store, and integrated retail operations. The Website serves as a primary means through which customers learn about, access, and purchase Defendant's goods and services, and is directly connected to the Subject Premises. Through the Website, customers may browse products, locate the retail store, and obtain information regarding the goods and services offered by Defendant at the Subject Premises.

6. BROOKLYN KARMA, CORP., is a retail/service business offering diverse ethnic foods, and foods from around the world to members of the general public through integrated physical retail store and e-commerce Website. The website enables customers to browse merchandise, obtain product information, review specific ethnic foods and purchase goods offered by Brooklyn Karma, Corp. Plaintiff was interested in browsing the specific foods and placing an order.

7. Plaintiff visited the Website on multiple occasions, including on or about May 3, 2026, with the intent to browse and purchase Defendant's goods and/or services.

8. During each visit, Plaintiff encountered multiple accessibility barriers that prevented her from identifying products, selecting options, adding items to a cart, or completing a purchase. These barriers are systemic and prevent blind and visually impaired individuals from independently accessing and utilizing the Website's goods and services.

9. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Plaintiff full and equal enjoyment of Defendant's goods, services, and digital content, in violation of federal, state, and city civil rights laws.

10. Plaintiff's intent to return to the Website is concrete, credible, and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible. Plaintiff relies on online shopping due to her disability and will return *immediately* once the Website is accessible to blind and visually impaired individuals.

11. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies, and ensure that the Website is fully accessible to blind and visually impaired consumers.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

13. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 under the New York State Human Rights Law, Article 15 Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") § 296 *et seq.*, and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

14. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, accessed the Website from this District, and suffered injury here.

15. Defendant conducts substantial business in this District by marketing and selling goods and services through its Website to New York consumers. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content and fulfilling transactions directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

16. Accordingly, jurisdiction and venue are proper because Plaintiff accessed the Website within this District and suffered injury here.

17. Defendant's operation of an interactive Website that is integrated with the Subject Premises in New York constitutes the operation of a place of public accommodation and/or a service thereof within this District. The discriminatory barriers encountered by Plaintiff on the Website are directly connected to Plaintiff's ability to access the goods and services offered at Defendant's physical location, thereby establishing a sufficient nexus between the Website and the Subject Premises.

## THE PARTIES

18. Plaintiff, STEPHANIE FOXWORTH, is a legally blind resident of New York County, New York. Plaintiff relies on screen-reader software to access digital content and complete online transactions and is a qualified individual under the ADA.

19. Defendant, BROOKLYN KARMA, CORP., is a domestic business corporation that, on information and belief, owns, operates, and controls the Website.

20. Defendant markets, advertises, and sells its goods and/or services directly to New York consumers through its Website and maintains a highly interactive platform that enables consumers to browse products, review descriptions, select options, and complete purchases. The Website includes detailed product pages that present images, descriptions, specifications, and purchasing information to consumers nationwide. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

21. Defendant continuously conducts business within this District through its Website by offering goods and services to residents and transmitting digital content to users located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

22. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in a manner that is accessible to blind and visually impaired individuals who rely on screen-reading technology has denied Plaintiff full and equal access to Defendant's goods and services.

23. Defendant's Website is a service of its physical places of public accommodation within the meaning of Title III of the ADA. The Website is not merely informational; rather, it is a fully integrated extension of Defendant's brick-and-mortar operations, through which customers can access, evaluate, and obtain the goods and services offered at the Subject Premises.

24. The inaccessibility of the Website therefore impedes Plaintiff's ability to access the goods and services of Defendant's physical location, including the ability to identify products sold at the Subject Premises, review pricing, and make purchasing decisions prior to visiting or interacting with the physical store.

25. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, researching, and communicating for sighted, blind, and visually impaired individuals alike.

26. Blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method

by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

27. Plaintiff is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 *et seq*., and the NYCHRL. Plaintiff relies on screen-reading software to access the Internet.

28. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

29. Industry-recognized accessibility standards exist to assist businesses in ensuring that websites are accessible to individuals with disabilities. Such standards provide guidance regarding the design and operation of accessible digital content.

**STATEMENT OF FACTS**

30. Plaintiff is a legally blind consumer who relies on screen-reader software to

navigate websites, read product information, and complete online transactions.

31. Plaintiff visited the Website on or about May 3, 2026 with the intent to browse and purchase Defendant's goods and/or services.

32. Plaintiff attempted to access specific products and/or services offered through the Website but encountered significant accessibility barriers. Plaintiff's ability to access the Website and fully benefit from its goods and services is hindered by multiple access barriers and noncompliant digital design practices, including but not limited to the following:

**i. Missing "Skip to Content" Link**
The Website does not provide a functional "Skip to Content" link, forcing keyboard and screen reader users to navigate through repetitive header and navigation content on every page before reaching the main content.

**ii. Submenus Not Keyboard Accessible**
The "Accessories" and "Candles, Etc." navigation submenus cannot be opened or accessed using keyboard controls alone, preventing keyboard users from accessing submenu content and navigation links.

**iii. Search Button Not Labeled**
The Website's search button is not properly labeled and does not convey its purpose to screen reader users, preventing users from identifying and utilizing the Website's search functionality.

**iv. Wishlist Links Do Not Reference Associated Products**
The "Add to Wishlist" links do not identify the products to which they relate, preventing screen reader users from determining which product would be added to the wishlist.

**v. Size Selection Causes Unexpected Page Refresh and Focus Loss**
Selecting a size option on a product page causes the page to unexpectedly refresh and returns keyboard focus to the top of the page, disrupting navigation and preventing users from continuing their interaction with the product page.

**vi. Quantity Adjustment Not Announced**
When product quantities are adjusted, no announcement or confirmation is provided to screen reader users, preventing users from determining whether the quantity change was successful or what the updated quantity is.

**vii. Gift Card Design Options Not Meaningfully Labeled**

Gift card design options are presented as radio buttons without meaningful labels or descriptions, preventing screen reader users from understanding the purpose of the options or identifying the selected gift card design.

**viii. "Check Gift Card Balance" Button Not Keyboard Accessible**
The "Check Gift Card Balance" button does not receive keyboard focus and cannot be activated using keyboard controls, preventing keyboard users from accessing the feature.

**ix. Contact Form Errors Not Announced**
When errors occur during contact form submission, error messages are not announced to screen reader users and focus does not move to the invalid field, preventing users from identifying and correcting submission errors.

**x. Checkout Form Required Fields Not Identified and Errors Not Announced**
Required checkout form fields are not properly identified, certain form fields lack accessible labels, and error messages are not announced to screen reader users, preventing users from completing the checkout process independently.

33. As a direct result of these barriers, Plaintiff was unable to identify products, select options, add items to a cart, and complete a purchase. Her exclusion was real, immediate, and directly caused by Defendant's failure to implement basic, industry-standard accessibility practices on the very pages offering the goods and/or services she needed.

34. Defendant's Website is directly integrated with its physical location and serves as a primary means by which customers access the goods and services offered at the Subject Premises. Through the Website, Defendant provides detailed product listings, descriptions, pricing, and promotional information for products offered through Defendant's integrated retail operation, and enables customers to identify, evaluate, and select merchandise prior to visiting the Subject Premises.

35. Plaintiff's attempts to access the Website were made in connection with her intent to obtain goods and/or services from Defendant's physical location. Plaintiff sought to use the Website to identify suitable products, review available options, and facilitate a transaction tied to Defendant's brick-and-mortar operations.

36. The accessibility barriers encountered by Plaintiff on the Website prevented her from accessing critical information necessary to utilize the goods and services offered at the Subject Premises, including the ability to identify products sold at Defendant's physical location, confirm available options, and make informed purchasing decisions.

37. As a result of these barriers, Plaintiff was effectively denied access not only to the Website, but also to the goods and services of the Subject Premises, as the Website functions as a gateway to those goods and services.

38. Defendant's Website is not a passive marketing tool; it is a fully interactive platform central to its business model. Through the Website, Defendant markets and sells goods and services nationwide, including to New York residents.

39. Defendant has failed to implement readily available accessibility measures necessary to ensure that blind and visually impaired individuals can access and utilize the Website.

40. Plaintiff's intent to return to the Website is concrete and ongoing. Plaintiff remains interested in purchasing Defendant's goods and/or services once the Website is accessible.

41. Plaintiff's need for accessible online shopping is permanent and ongoing due to her disability.

42. Defendant's failure to make the Website accessible denies Plaintiff full and equal enjoyment of its goods and services.

## FIRST CAUSE OF ACTION
## (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

43. Plaintiff restates Paragraphs 1-41 as though fully set forth herein.

44. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

45. Defendant owns, leases, or operates a place of public accommodation.

46. Defendant's Website is a service of a place of public accommodation and is heavily integrated with Defendant's physical location. Accordingly, the Website must be accessible to blind and visually impaired individuals on equal terms.

47. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

48. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

- A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and
- A failure to take such steps may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

49. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing.

50. Defendant has denied Plaintiff full and equal access to its goods and services.

51. Defendant has failed to provide auxiliary aids and services necessary for accessibility.

52. Defendant's conduct violates the ADA.

53. Plaintiff is entitled to injunctive relief.

**SECOND CAUSE OF ACTION**
**(Violation of NYSHRL)**

53. Plaintiff restates Paragraphs 1-41 as though fully set forth herein.

54. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq*., covers the actions of the Defendant.

55. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

56. Defendant, at all relevant times to this action, owns and operates a place of public

accommodation, the subject Website within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

57. Plaintiff has visited the Website on multiple occasions and has encountered accessibility barriers that deny her full and equal access.

58. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

60. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec.

Law § 296(2)(c).

61. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

62. Established accessibility standards and testing methodologies exist to assist businesses in providing accessible websites for individuals with disabilities. Defendant failed to implement such accessibility measures despite the widespread availability of accessibility guidance and tools.

63. Defendant has intentionally and willfully discriminated against the Plaintiff in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

64. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff, causing irreparable harm.

65. Plaintiff is therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq*.

**THIRD CAUSE OF ACTION**
**(Violation of NYCRL)**

66. Plaintiff restates Paragraphs 1-41 as though fully set forth herein.

67. Plaintiff served notice thereof upon the New York State Attorney General, as required by New York State Civil Rights Law ("NYCRL") § 41.

68. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

69. "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision." N.Y. Civ. Rights Law ("NYCRL") § 40-c.

70. § 292 of Article 15 of the N.Y. Executive Law deems a disability, "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

71. Defendant discriminates against the Plaintiff under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

72. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and preventing access in violation of NYCRL § 40.

73. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discrimination against the Plaintiff.

74. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the

provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*.

75. Plaintiff hereby demands compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq*.

**FOURTH CAUSE OF ACTION**
**(Violation of NYCHRL)**

76. Plaintiff restates Paragraphs 1-41 as though fully set forth herein.

77. N.Y.C. Administrative Code ("NYCHRL") § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

78. Defendant is subject to NYCHRL because it owns and operates the Website, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

79. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therewith to be inaccessible to blind individuals. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

80. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

81. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

82. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

83. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

84. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

85. Plaintiff is also entitled to reasonable attorneys' fees and costs.

86. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff seeks judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

87. Plaintiff restates Paragraphs 1-41 as though fully set forth herein.

88. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

89. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

1. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

2. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully accessible to blind and visually impaired individuals;

3. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

4. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

5. Pre-judgment and post-judgment interest;

6. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

7. Such other and further relief as this Court deems just and proper.

Date: 9/21/2026

Respectfully submitted,

*/s/ Jennifer E. Tucek, Esq.*
Law Office of Jennifer Tucek, PC
Bar No. JT2817
641 Lexington Avenue, 15th Floor
New York, New York 10017
(917) 669-6991
TucekLaw@Gmail.com
*Attorney for Plaintiff*